UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF INDIANA

~~TERRE HAUTE~~ DIVISION
Indianapolis

**FILED**

**10/24/2023**

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

| | |
|---|---|
| Jeremy Lee Johnson ) <br> (Plaintiff) ) <br> Vs ) <br> ) <br> Henry County Council ) <br> Henry County Sheriff's Department ) <br> Rick McCorkle ) <br> Tina Fox ) <br> Debra Ellington ) <br> ~~Centurion of Indiana~~ ) <br> ~~Centurion Staff~~ ) <br> Wellpath     (Defendants) ) | Cause Number: 2:23-cv-00504-JMS-MJD <br> To Be Assigned By Clerk |

**PRISONER COMPLAINT    42 U.S.C. § 1983**

Verified Civil Rights Complaint[1]

**I. Introduction:**

This is a civil rights action under 42 U.S.C. § 1983, 42 U.S.C § 12102, 42 U.S.C § 12132 and the First, Eighth, and Fourteenth Amendment of the United States Constitution, against the Henry County Council, the Henry County Sheriff's Department, the Henry County Sheriff, and the Henry County Jail personnel, including but not limited to Wellpath.

**II. Parties**

(All Defendants are sued in both their Official and Individual Capacities)

1. Plaintiff, Jeremy Lee Johnson, DOC #: 114749, (Plaintiff) is currently incarcerated at the Putnamville Correctional Facility ("ISF") located at: 1946 W US Hwy 40, Greencastle, Indiana, 46135.

2. Defendant, Rick McCorkle, (McCorkle) is or was at all relevant times the Sheriff of Henry County, Indiana, with responsibility for operating and maintaining detention, Penal, and corrective institutions within Henry County, Indiana, including the Henry County Jail, located at: 1033 Ron Lampe Way, New Castle, Indiana 47362

---

[1] 1 "[A] verified complaint, sworn, and submitted under penalty of perjury can be considered "affidavit material" if it otherwise complies with Rule 56 of the Federal Rules of Civil Procedure" *James v. Wilson*, 90 F.3d 245, 247 (7th Cir. 1996)

3

3. Defendant, Tina Fox, (Fox) is or was at all relevant times the Jail Commander of Henry County Jail, with responsibility for operating and maintaining the Henry County Jail, located at: 1033 Ron Lampe Way, New Castle, Indiana 47362

4. Defendant, Henry County Sheriff's Department, is or was at all relevant times responsible for operating and maintaining detention, penal, and corrective institutions within Henry County, Indiana, including the Henry County Jail, located at: 1033 Ron Lampe Way, New Castle, Indiana 47362

5. Defendant, Henry County Council, is or was at all relevant times, the fiscal body of the Henry County Jail and is named in their individual and official capacities and may be served at: Henry County Court House, 1215 Race St., New Castle, Indiana 47362

6. Defendant, ~~Centurion of~~ Wellpath Indiana, (~~Centurion~~) is a for profit corporation contracted by the Henry County Jail to provide Health Services for Inmates like the Plaintiff at its facilities, and is located at: ~~550 N. Meridian St., Indianapolis, Indiana 46204~~ 1033 Ron Lampe Way, New Castle, IN 47362

7. Defendant, Debra Ellington, (Ellington) is or was at all relevant times, a Nurse employed by Wellpath ~~Centurion~~ to provide care for Inmates like Plaintiff at the Henry County Jail, located at: 1033 Ron Lampe Way, New Castle, Indiana 47362

8. ~~Defendant, Centurion Medical Staff, is or was at all relevant times, Doctors or Nurses employed by Centurion, who provides medical services for the Henry County Jail, in their individual and official capacities, and can be served through his employer at: 1033 Ron Lampe Way, New Castle, Indiana 47362~~

### III. Equitable Tolling

9. Federal tolling statutes of limitations were in effect while Plaintiff was exhausting his Administrative Remedies. *Scanlon v. Drew*, 2000 U.S. App. LEXIS 18776 (7th Cir. July 31st, 2000) (unpublished) (The Statute of limitations may be tolled while a prisoner exhausts his administrative remedies)[2]

---

[2] 2 Section 1983 does not contain an express statute of limitations, so Federal Court adopts the forum state's statute of limitations for personal injury claims. *Wilson v. Garcia*, 471 U.S. 261, 276, 85 L. Ed. 2d 254, 105 S. Ct. 1938 (1985); *Ashafa v. City of Chicago*, 146 F.3d 459,461 (7th Cir. 1998). In Indiana, the limitations period for 1983 cases is two years. Moreover, because "the chronological length of the limitations period is interrelated with provisions regarding tolling, revival, and questions of application," federal courts must "also borrow the state's tolling rules— including any equitable tolling doctrines." *Smith v. City of Chicago Heights*, 951 F.2d 834, 839-40 (7th Cir. 1992). There can be no question that a federal court applying Indiana law must toll the statute of limitations if a "statutory prohibition" exists that prevents a plaintiff's cause of action. Here, such a statutory prohibition exists. The PRLA requires exhaustion of administrative remedies prior to filing suit under 1983. See 42 U.S.C. (1997e (a) (2000). According to the statute, no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. Id. See also *Smith v. Zachary*, 255 F.3d 446 (7th Cir. 2001). While this Circuit has yet to rule on the precise relationship between 1997e the Indiana tolling statute, other Circuits have concluded that Federal Courts should toll state statutes of limitations while inmates exhaust their administrative remedies under 1997e. See *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000); *Harris v. Heamann*, 198 F.3d 153, 157-59 (5th Cir. 1999); see also Cardenas v. Washington, 12 Fed. Appx. 410, 2001 U.S. App. LEXIS 14056 (7th Cir. 2001) (unpublished) (acknowledging *Brown and Harris*, but not deciding the issue for this Court)

4

## IV. Exhaustion

10. Plaintiff has exhausted all available administrative remedies to him with respect to all claims. Failure to exhaust under the PLRA is "an affirmative defense the defendant must plead and prove." *Jones v. Bock*, 549 U.S. 199, 204, 216, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). In most circumstances, the appropriate procedural mechanism is a Motion for Summary Judgment under Federal Rule of Civil Procedure 56, with the defendant attaching the evidence necessary to demonstrate a failure to exhaust. Id.

## V. Back-Ground

11. Plaintiff was arrested on or about April 7th, 2022.

12. At the time of arrest, Plaintiff was being treated for Opioid Use Disorder (OUD), by participating in a Medicated Assisted Treatment (MAT) program, and had been undergoing said Treatment for approx. three years.

13. At the time of Plaintiff's arrest, Plaintiff was taking Suboxone 8mg/2mg four times per day.

14. Plaintiff explained the need for this medication, in detail, during routine "book-in questioning" and explained that Plaintiff would soon be experiencing withdrawal.

15. Plaintiff also explained that he took Wellbutrin 150 mg two times per day.

16. Plaintiff's serious medical needs were ignored.

17. On or about April 10th, 2022, Henry County was opening a new jail, so all Inmates were moved to the new facility.

18. Upon arrival at the new Facility, Inmates could not utilize the Inmate Grievance procedure, due to problems with the Inmate 'kiosks'.

19. Inmates, at this time, were on 'lockdown' status for 23 hours per day, for the first 45 to 60 days. The only way to submit a grievance complaint at this time, was to write on a scrap piece of paper, or by word of mouth.

20. Plaintiff continually expressed to the Defendants the enormity of his situation concerning withdrawal symptoms.

21. The only response Plaintiff was given was that his Medications were not part of the Jails formulary, and that Plaintiff would not receive his normal Medications.

5

22. On or about April 15th, 2022, Plaintiff's cell door was opened during Medication Pass. Plaintiff went to the Cell Blocks main door where Custody and Centurion staff were waiting with the Medication Cart. Plaintiff did receive one 150 mg Wellbutrin.

23. Plaintiff took said Medication.

24. At this same time, Plaintiff explained that he was experiencing severe withdrawals.

25. Nurse Ellington explained to Plaintiff that when the Jail staff obtained the Wellbutrin from the pharmacy, they were informed that Plaintiff did, in fact, have a prescription for Suboxone, however, when Plaintiff asked where the Suboxone was at, Nurse Ellington smirked, and informed Plaintiff he would not be receiving suboxone, due to jail policy, and there was nothing she could do about Plaintiff's withdrawal symptoms.

26. Plaintiff was sent back to his cell.

27. This situation went on for several weeks, Plaintiff advising the Defendants of his serious medical needs, and the Defendant's indifference.

28. Plaintiff could not eat or sleep. Plaintiff seriously contemplated suicide as an escape from withdrawal. Plaintiff simply couldn't believe his medical needs were being ignored, and that he was left to suffer in such a way. Plaintiff truly believed death was preferable, and given opportunity, would not be writing this complaint.

## VI. Defendants Committed Medical Negligence and Deliberate Indifference
## While Housed at the Henry County Jail

29. On or about April 7th, 2022, the Plaintiff became incarcerated at the Henry County Jail.

30. The alleged Rights Violations occurred while the Petitioner was incarcerated at the Henry County Jail, in the State of Indiana, located at:

> Henry County Jail
> 1033 Ron Lampe Way
> New Castle, Indiana  47362

31. On or about April 7th, 2022, during routine questioning by Defendant Tina Fox, Plaintiff explained all the above sited Medical issues, the need for Doctor's care, treatments that were on-going, the underlying reasons for these treatments, the underlying reasons for being under Doctor's care, and the need for Prescription Medications. Plaintiff expressed his need for medical attention, describing in detail Opioid Use Disorder (OUD), and the adverse effects the Plaintiff was suffering, especially pain and withdrawals.

6

32. Plaintiff, during his entire time of incarceration at the Henry County Jail, tried numerous times to obtain/receive Health care for his medical issues described supra., both verbally and via Health Care Request form, including attempts to request reasonable accommodation(s) under the ADA. Plaintiff was told multiple times by jail staff there was not an "ADA Coordinator."

33. Plaintiff was NEVER able to continue his previously ordered testing and treatment.

34. Plaintiff NEVER received a single dose of his previously prescribed Suboxone.

35. Plaintiff was NEVER given any type of substitute medication for Medicated Assisted Treatment.

36. As is clearly shown and documented, via attached Medical Records, Plaintiff was clearly in need of Medical Treatment, follow-up medical treatment, and MAT.

37. Though the needs for this treatment were clearly known, they were ignored, in violation of the United States Constitution, 14th Amendment, the State of Indiana Constitution, Article 1, titles 12, 15, and 16, the State of Indiana Code, IC 11-10-3-2, IC 11-10-8-2, IC 11-10-9-2, IC 11-11-5-4, and 210 IAC 3-1-11.

38. "OUD (Opioid Use Disorder) is a chronic disease"..."MAT (Medicated Assisted Treatment), abruptly withdrawn, can lead to post relapse issues" "Someone going to jail, who is taken off MAT during that period would experience an increased risk of overdose or death" "A scientific consensus is growing that refusing to provide individuals with their prescribed MAT is Medically, Ethically, and Constitutionally unsupportable denial of care" *Smith v. Aroostook Cty.*, 376 F. Supp. 3d 146

39. Plaintiff was told that the medications he was prescribed by a <u>Licensed Medical Doctor</u>, for legitimate Medical Needs were "against jail policy" and were not allowed in the jail due to the potential for abuse, and concern for Inmates being assaulted or extorted out of, or selling, their medications

40. Suboxone is prescribed to prevent and control substance abuse issues.

41. Suboxone is prescribed for chronic pain requiring long term opioid treatment, or chronic pain with opioid tolerance.

42. Suboxone contains an ingredient, Naloxone, which is used specifically as an opiate blocker and to treat opioid overdose.

43. As far as any potential for any type of abuse of medications in a County Jail or prison goes, if a situation like any cited above, concerning theft or sells of medication would arise, even with a medication such as Morphine or Xanax, in a County Jail or Prison type of setting, the fault falls completely on the employee administering the medication and/or the prescribing doctor.

7

44. If Medications are administered properly, or prescribed in a liquid form, there is no way they can be abused, taken, stolen, or sold because the Inmate or Offender is simply NOT in possession of the medication, except to take the dose as prescribed.

45. It is the Custody Employee's, or Medical professional's responsibility to see the Medication is taken properly, either by proper observation of the inmates taking their medications, or prescribing the proper forms of medications.

46. "In attempt to convince me [United States District Court for the District of Maine] of the dangers of allowing Buprenorphine [Suboxone] in the jail's formulary, the Defendants explained that Suboxone, like many other illicit drugs, is commonly and creatively smuggled into the jail and used illicitly by Inmates. There is no question that Suboxone can be abused by people who are not prescribed it to control Opioid Use Disorder. But, in describing this reality, the Defendants strengthen the Plaintiff's argument that she [Plaintiff] is likely to be harmed if her [Plaintiff's] Buprenorphine is abruptly stopped. Without the MAT, the Plaintiff will likely experience cravings for opiates and she [Plaintiff] will be in a facility where illicit drugs are available." *Smith v. Aroostook Cty.*, 376 F. Supp. 3d 146

47. "Jail Policy" simply does not have Doctorate, or a Ph. D. One does not simply change a Judge's Order to suit the situation. By the same logic, one should not simply change a Licensed Medical Doctor's orders to simply suit the situations.

48. The simple and sad fact of the matter is, that Plaintiffs medical needs were known and documented, that Plaintiffs medical needs were deliberately ignored, and last and perhaps worst, rather than provide the Plaintiff treatment, the Defendants chose to wait and allow Plaintiff's Medical needs to become the problem of someone else.

## VII. Defendants were Complicit in Causing Plaintiff Pain

49. A trier of fact may infer participation in a crime from a defendant's failure to oppose the crime, companionship with one engaged therein, and a course of conduct before, during, and after the offense which tends to show complicity. *Harris v. State*, 425 N.E.2d 154, 1981 Ind. LEXIS 819 (Ind. 1981).

50. Under the same logic as *Harris v. State*, 425 N.E.2d 154, 1981 Ind. LEXIS 819 (Ind. 1981), the fact that the Defendants knew of the Plaintiffs need for treatment, and pain management, as explained thus far, makes the Defendants complicit in the CAUSE of these issues.

51. This being said, this IS an violation of the United States Constitution and the State of Indiana's Constitution, both of which protect an Inmate/Offender from unnecessary rigor, corporal punishment, and cruel and unusual punishment.

52. The fact is, that if you know of a person needing help (medical treatment), and you refuse to help (provide medical treatment), especially when you have taken away the person's ability

8

to seek help (Medical treatment), you become a part of the reason for that person's needs (medical treatment).

53. The fact that the Defendants KNEW that Plaintiff was in pain and needed treatment, the Defendants KNEW that the injuries and the pain were treatable, and the Defendants REFUSED to treat Plaintiffs pain and injuries, or even provide any treatment at all, constitutes that the Defendants WERE in fact, part of the cause of the Plaintiff suffering severe and unnecessary pain.

54. Each and every person Plaintiff has named in this complaint could have, at any time, solved these issues by simply acknowledging Plaintiffs medical needs and providing treatment, instead Plaintiff's pleas and requests were ignored, and Plaintiff had to suffer needlessly.

## VIII.   Henry County Jail's Lack of Medication Assisted Treatment (MAT) Program

55. A look inside the United States prisons and jails reveals the key battleground of the Nations decades-long opioid crisis that has come out of the war on drugs.[3] An estimated 80% of the 2.3 Million inmates need lifesaving treatment for opioid use disorder (OUD),[4] but because "only a small percentage receive any help at all[5]" they face a shockingly high, and seemingly insurmountable risk of overdose upon release[6]. If forced to withdraw and abstain from opioids while in jail, a person with OUD loses their tolerance and "raise[s] the risk of . . . overdose in the first few weeks of reentry by a factor of 140" compared to the general population. [7]

56. The Opioid addiction epidemic has been one of the most overwhelming public health crises our country has faced. It has also created a *Legal* crises, as its aftermath spills over into the criminal, civil, and family Courts. One estimate puts its cost to the U.S. economy at over

---

[3]   See Leo Boesky, Sequester the Drug War: Drug Control Spending and the Opportunity to Stop Throwing Good Money after Bad, HUFFPOST, https://www.huffpost.com/entry/war-on-drugs-spending_b_3367725 (July 31, 2013) (detailing the United States" supply and demand reduction tactic, and the accompanying massive spending, as having no real effect on American's drug abuse but nonetheless increasing international violence and human rights abuses).

[4] Leo Boesky Lindsay LaSalle, Michelle Newman, Janine Par, James Tam & Alyssa Tochka, *Fatal Re-Entry: Legal and Programmatic Opportunities to Curb Opioid Overdose Among Individuals Newly Released from Incarceration*, 7 NE. U. LJ. 149, 151 (2015); *see also* Press Release, Wendy Sawyer & Peter Wagner, Prison Policy Initiative, Mass Incarceration: The "Whole Pie 2020 (Mar, 24, 2020) (available at https:llwww. prisonpolicy.org/reports/pie2020.html) ("450,000 are incarcerated for nonviolent drug offenses on any given day."),

[5] Beletsky et al., supra note 2, at 152.

[6] The risk of overdose is not limited to post incarceration. Id. at 156. Drugs are "sporadic] cally] available]" in jail, and inmates" decreased tolerance and intense cravings from withdrawal make them susceptible to overdose in jail as well. Id.; see id. At 156 n.29 (listing instances of drug overdoses in prisons).

[7] Leo Beletsky & Jeremiah Goulka, the Opioid Crisis: A Failure of Regulatory Design and Action, 34 CRIM. JUST. 35, 39 (2019). A 2017 report found that fifty-eight percent of people in state prisons either have a drug dependence or misuse drugs, while about five percent of the general population meet these S31ue criteria. German Lopez, How America's Prisons Are Fueling the Opioid Epidemic, Vox, https://www.vox.com/policy-and-politics/20l8/3/13/17020002/prison-opioid-epidemic-medications-addiction (Mar. 26, 2018, 9:20 AM). However, the disparity in treatment produces the opposite outcome for inmates: "(Less than five percent of people who were referred to [OUD] treatment through the justice system received [M]ethadone or [B]uprenorphine, compared to nearly forty-one percent of people referred through other sources." Id.

9

$500 billion in 2015.[8] More than a hundred people die every day from an opioid overdose[9], with that number likely increasing during the COVID-19 pandemic.

57. At least 2.3 million people in the United States have Opioid Use Disorder (OUD), yet over 60% do not have access to evidence-based treatment.[10]

58. During Plaintiff's incarceration at the Henry County Jail, the Defendants prohibited the use of Medication Assisted Treatment (MAT) for Opioid Use Disorder (OUD) of which the Plaintiff suffered from. Henry County Jail's MAT policy, or lack thereof, discriminated against Plaintiff based on the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act, and the 14th Amendment of the United States Constitution.

59. Defendant's prohibition against an effective Medication Assisted Treatment (MAT) for Opioid Use Disorder (OUD) subjected Plaintiff to undergo forced withdrawals, despite Plaintiff's success with OUD while on his current Suboxone treatment plan.

60. Plaintiff's requests to Defendants Rick McCorkle, Tina Fox, and Debra Ellington for an adequate MAT were repeatedly denied, though these Defendants were aware Plaintiff had a Legal prescription and successful treatment plan using Suboxone for OUD.

61. The primary reason for this denial, is Sheriff Rick McCorkle and the Henry County Sheriff's Department Policy of Refusing to provide Medicated Assisted Treatment and/or allowing Suboxone use in the Henry County Jail.

62. Centurion's and the Henry County Sheriff's Department's policy of denying Medicated Assisted Treatment was a Moving Force behind Plaintiff's injury.

### IX. Immediate Cessation or Forced Tapering Off

63. "Immediate Cessation or Forced Tapering Off of Medications like Suboxone when incarcerated puts people at very high risk for relapse, overdose, or death upon release." *Finnigan v. Mendrick*, No. 21-cv-341, 2021 U.S. Dist. LEXIS 34863, at *6 (N.D. ILL. Feb. 24, 2021) (Declaration of Robert Reeves, M.D., at ¶14 (Dckt. No. 29)).

---

[8] The Council of Economic Advisors, Exec. Office of the President, The Underestimated Cost of the Opioid Crisis at 1 (NOV. 2017), https://www.hsdl.org/?veiw&did=806092 [https://perma.cc/2CPM-DBTW]. This was considerably higher than other estimates, as it attempted to better value the cost of lives, rather than just lost income.
[9] In 2019, there were 49,860 overdose deaths involving any opioid, which is about 130 deaths per day. Overdose Death Rates, Nat'l Inst. on Drug Abuse (Jan 29th, 2021), https://www.drugabuse.gov/drug-topics/trends-statistics/overdose-death-rates [https://perma.cc/TV8R-HANX]; see also Joseph Friedman et al., Overdose-Related Cardiac Arrests Observed by Emergency Medical Services During the US COVID-19 Pandemic, JAMA Psychiatry (Dec. 3rd, 2020), https://jamanetwork.com/journals/jamapsychiatry/fullarticle/2773768 [https://perma.cc/7PA5-3VMP]
[10] Rebecca L. Haffajee et al., Policy Pathways to Address Provider Workforce Barriers to Buprenorphine Treatment, 54 Am. J. Preventative Med. S230, S230 (2018).

64. The majority of inmates in County Jails suffer from OUD.

65. Illicit drug use is a known and common problem at the Henry County Jail, and County Jails in general.

66. There was a general failure to implement promised safety policies and the lack of a MAT program was a dangerous condition affecting the general public.

67. Defendants were negligent and deliberately Indifferent under the 14th Amendment of the United States Constitution towards Plaintiff's serious Medical needs by failing to implement a MAT program and by refusing to treat the Plaintiff's OUD with Suboxone or a similar Medication.

68. "The Defendants illogically insist that withdrawal does not amount to injury because the Jail has a protocol in place to mitigate withdrawal symptoms. This argument misses the mark in two respects. First, there is no indication in the record that the withdrawal protocol eliminates symptoms- in fact, the protocol accounts for the fact that symptoms may persist for days. Second, the Defendant's views assume that withdrawal is a necessary evil. For incoming Inmates who are active users of illicit opioids, withdrawal may be a necessary starting point for treatment. However, for people like [Plaintiff] whose Opioid Use Disorder is being successful managed by a Medicated Assisted Treatment, withdrawal is a counter-productive, painful experience that is easily identified as injury." _Smith v. Aroostook Cty._, 376 F. Supp. 3d 146, 161 fn.21, 2019 U.S. Dist LEXIS 51689 (D.Me., Mar, 27, 2019)

### X. Plaintiff is a Qualified Disabled Person

69. Prior to Plaintiff's 2022 Henry County Incarceration, Plaintiff was diagnosed with Opioid Use Disorder (OUD).

70. The Diagnoses described supra, causes Plaintiff, including but not limited to, the following: Opioid withdrawal symptoms including pain through-out his body, nausea, vomiting, diarrhea, anxiety, and sleeplessness.

71. Plaintiff was prescribed Suboxone prior to his Henry County Jail incarceration.

72. "Plaintiff is "eligible" to receive medical services while he is incarcerated." See generally _Estelle v. Gamble_, 429 U.S. 97, 97 S. Ct. 285, 50 L.Ed 2d 251 (1976).

73. "Plaintiff counts as an "individual with a disability" because he has been diagnosed with Opioid Use Disorder and is participating in a supervised rehabilitiation program." _P.G. v. Jefferson County_, 2021 U.S. Dist. LEXIS 170593, *10-11 (N.D. NY, Sept. 7, 2019)

11

74. Henry County Jail is a "Public Entity" within the meaning of Title II of the Americans with Disabilities Act.

75. Plaintiff's diagnosed medical conditions make him and individual with disabilities pursuant to the Americans with Disabilities Act and Rehabilitation Act.

76. Henry County and/or Henry County Sheriff's Department and/or Henry County Jail receive some federal Funding.

> Wellpath is a private entity that offers public accommodations under Title III of ADA.

77. Plaintiff informed Correctional "Booking" Officer at the Henry County Jail of his diagnosed medical conditions, medications he was taking, and subsequent injuries.

78. Plaintiff verbally, and in writing, informed Henry County Jail staff of his diagnosed medical conditions described supra, their subsequent injuries, and requesting that the County Jail/Sheriff's Office reasonably accommodate Plaintiff's disabilities, by permitting him to continue his daily successful Suboxone ~~and Neurontin~~ treatments.

Wellpath or Henry County Jail did not have a qualified ADA Coordinator pursuant to 28 C.F.R. §35.107(a) and did not have an adequate grievance system to challenge reasonable accommodations denials pursuant to 28 C.F.R. §35.107(b).

79. These repeated requests were repeatedly denied/ignored. Defendants discriminated and failed to reasonably accommodate Plaintiff's disabilities in violation of the Americans with Disabilities Act and Rehabilitation.

80. "Upon review, P.G. is substantially likely to succeed on the merits of this claim [42 USC § 1983-14th Amendment]. Plaintiff has established that Opioid Use Disorder is a chronic brain disease and that opioid withdrawal has been recognized as an "objectively" serious medical condition that, according to Plaintiff's treating Physician, must be treated with Methadone [Suboxone]." P.G. v. Jefferson County, 2021 U.S. Dist. LEXIS 170593, *10-11 (N.D.N.Y. Sept. 7, 2021)

## XI. Refusal of Grievance Procedure

81. In the interest of 'exhausting Administrative Remedies' the Plaintiff DID attempt to utilize the Grievance Procedure while incarcerated at the Henry County Jail.

82. Each time Plaintiff attempted to Submit an 'Inmate Grievance' via paper or word of mouth, Plaintiff was ignored without any type of answer provided in writing, or without the Petitioner receiving said 'Inmate Grievance' form back (answered or not) contrary to Indiana Administrative Code 3-1-15 (h).

83. Indiana Administrative Code 3-1-15 (h) says all Inmates shall have the Right to file written grievances regarding treatment of conditions in the Jail with the Sheriff or his or her designee. Grievances shall be promptly investigated, and a written report stating the disposition of the grievance shall be provided to the Inmate. The Sheriff shall establish, in writing a grievance procedure, which shall be made known and distributed to all Inmates upon arrival and initial screening.

12

84. [T]here are certain "special circumstances" in which, though administrative remedies may have been available [,] the prisoners failure to comply with administrative procedural requirements may never-the-less have been justified. *Giana v. Goord*, 380 F. 3d 670, 676 (CA 2004). In particular, that was true when a prisoner "reasonably" – even though mistakenly- "believed that he had sufficiently exhausted his remedies." *Giana v. Goord*, 787 F. 3d at 695.

85. Plaintiff DID attempt to utilize the proper remedies, in the proper way. The issue here is that an Inmate CANNOT exhaust 'Administrative Remedies' if the 'Administration' refuses to cooperate.

86. Plaintiff attests that his Inmate Right to 'file written grievances' pursuant to 210 IAC 3-1-15 (h) were violated by the Defendants during his entire time of incarceration at the Henry County Jail.

87. Plaintiff was threatened with 'lockdown' on at least two occasions by the 'pod officer' at the Henry County Jail, for requesting Inmate Grievance Forms.

## XII. Inadequate Staffing and Training

88. Defendant, Rick McCorkle's policy or practice of inadequately staffing the Jail, as well as inadequately training Jail Staff to document the need for Opioid Withdrawal Treatment for both incoming and current Jail detainees, was a "moving force" in Plaintiff not being able to receive either onsite at the Jail, or being transported daily to appropriate Medical facilities to receive appropriate care.

89. The Officers (1) did not receive adequate training to monitor Inmates going through withdrawal and thus (2) many did not consider vomiting or sleeplessness worthy of reporting or were trained to use their discretion.

90. A pattern of similar incidents (as described supra) established that the Defendants were on notice of constitutional violations and the lack of proper training is a "moving force" behind Plaintiff's injuries.

## XIII. Inadequate Funding- Conditions of Confinement

91. Henry County Council did not provide the Henry County Sheriff's Office with the full amount of its requested funding.

92. Henry County Sheriff's requested funds were allegedly necessary for the operation of the Henry County Jail and that two purposes of the additional funds could be to eliminate understaffing or create an effective Medication Assisted Treatment program.

### XIV.  No Penological Objectives

93. Administrative convenience, an attempt to immunize oneself from public scrutiny, mistake, and inadvertence, discrimination, and suppression of free speech are not legitimate penological objectives.

94. The conditions of Plaintiff's confinement within the Henry County Jail deprived Plaintiff of life's necessities by which was not the least restrictive means to achieve the same penological goal. The conditions of Plaintiff's confinement within the Henry County Jail deprived Plaintiff of life's necessities by forcing Cruel and Unusual punishment in violation of the Eighth and Fourteenth Amendment of the United States Constitution.

95. As a direct and proximate result of the acts and omissions of the Defendants, "Jeremy Lee Johnson" suffered (but not limited to) the following injuries and damages:

    a) Violation of his Constitutional Rights under the Eighth and Fourteenth Amendment of the United States Constitution to be free of Cruel and Unusual Punishment;
    b) Loss of Physical Liberty;
    c) Physical Injuries/pain;
    d) Mental and Emotional Anguish;
    e) Medical Expenses;
    f) Irreparable Harm;
    g) Additional Financial Losses, including costs associated with enforcing his civil rights, pursuant to 42 U.S.C § 1983, and the laws of the State of Indiana.

96. The Acts and Omissions of the Defendants violated the following clearly established and well settled Federal Constitutional Rights of Plaintiff, Jeremy Lee Johnson:

    a) Freedom from punishment without a legitimate penological basis;
    b) Freedom from being excluded from participating in programs, services, or other activities based upon his disabilities;
    c) Freedom from not using the least restrictive means standard to achieve the same penological goal;
    d) Freedom from not being discriminated against.

### XV.  Defendants Show Negligence and Deliberate Indifference to Plaintiff's Increased Risk of Death upon Release

97. "A Medical need is "serious" if it is one that a Physician has diagnosed as mandating treatment, or one that is so obvious even a Lay Person would recognize as needing Medical Treatment." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)

14

98. Plaintiff was refused any treatment for OUD, including his previously ordered treatment.

99. "Immediate Cessation or Forced Tapering Off of Medications like Suboxone when incarcerated puts people at very high risk for relapse, overdose, or death upon release." _Finnigan v. Mendrick_, No. 21-cv-341, 2021 U.S. Dist. LEXIS 34863, at *6 (N.D. ILL. Feb. 24, 2021) (Declaration of Robert Reeves, M.D., at ¶14 (Dckt. No. 29)).

100. "Someone going to jail, who is taken off MAT during that period would experience an increased risk of overdose or death." _Smith v. Aroostook Cty._, 376 F. Supp 3d 146, 151 n.3, 2019 U.S. Dist LEXIS 51639 (D.Me., mar. 27, 2019)

101. "If forced to withdrawal, and abstain from opioids while in jail, a person with OUD loses their tolerance and 'raise[s] the risk of overdose in the first few weeks of reentry by a factor of 140' compared to the general prison population." [Leo Beletsky & Jeremiah Goulka, _The Opioid Crisis: A failure of Regulatory Design and Action_, 34 Crim. Just. 35, 39 (2019)]

102. Plaintiff has suffered from OUD and SUD in excess of 20 years. Plaintiff has tried numerous "rehabs and half-way houses" and "inpatient detox centers" and been to "every 12-step program known to man."

103. Plaintiff's drug of choice was Heroin. It seems that during Plaintiff's incarceration, street grade Fentanyl has become a problem. Nearly all street drugs now contain Fentanyl, in sometimes lethal amounts. Worse, due to incarceration and refusal of MAT, Plaintiff's tolerance has been reduced to nothing. In summary, drugs are far more powerful (Fentanyl is 50x stronger than Morphine), incarceration has stripped away tolerance, and the Henry County Jail could, but refuses to, provide Plaintiff with appropriate MAT thus exponentially increasing Plaintiff's chances of _Overdosing and Dying_ upon release.

104. "Once more: The Alcoholic at certain times has no effective mental defense against the first drink. Except in a few rare cases, neither he nor another human being can provide such a defense." [_Alcoholics Anonymous_, page 43]

105. "Our addiction enslaved us. We were prisoners of our own mind and were condemned by our own guilt. We gave up the hope that we would ever stop using drugs. Our attempts to stay clean always failed, causing us pain and misery." [_Narcotics Anonymous_, page 7]

106. It has been proven, again and again in Plaintiff's personal experience, that relapse is near inevitable. Without Suboxone, which has granted Plaintiff his only reprieve from the torture of relapse, withdrawal, cravings, and psychological symptoms (anger, depression, anxiety, sleeplessness), added to the circumstances of drugs being more powerful, tolerance reduced to nil, inevitable relapse, and easily available drugs, Plaintiff is in extreme mortal danger from relapse, and the Defendants were Negligent and Deliberately Indifferent to this danger.

107. "Unavoidable overdose upon release, however, is Cruel and Unusual punishment. The prisoner cannot avoid it once sentenced, and it is therefore a prison condition." [*Battleground of the Opioid Crises: the Eighth Amendment Right to Medication Assisted Treatment in Prisons and Jails, and upon Release* (Claire E. Scavone, Managing Editor, Emory Law Journal, Volume 71; Emory University School of Law, J.D. 2022; Wofford College, B.A. 2019

## XVI. Deliberate Indifference

108. "Prison Officials can be liable for violating the Eighth Amendment when they display Deliberate Indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721-22 (7th Cir. 2021)

109. "To prevail on a deliberate difference claim, a Plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately indifferent, that is subjectively, indifferent." *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021)

110. "A medical condition is objectively serious if a Physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2021)

111. Plaintiff's OUD and needs for Pain Management and MAT were *diagnosed* and treatment, via Suboxone, was *ordered* by a Licensed Medical Doctor.

112. "Of course, medical professionals rarely admit that they deliberately opted against the best course of treatment. So in many cases, deliberate indifference must be inferred from the propriety of their actions." *Dean v. Wexford Health Services, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021)(internal citations omitted)

113. Plaintiff was already, prior to incarceration, successfully treated (using Suboxone) for OUD. The Defendants have adamantly refused a replacement medication, thus ignoring Plaintiff's serious medical needs.

114. "Deliberate Indifference means that the Defendant 'acted in an intentional or criminally reckless manner, i.e., the Defendant must have known that the Plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.'" *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005)

115. "Several circumstances can permit a Jury to reasonably infer deliberate indifference, such as denial of medical treatment altogether, delay of medical care, continued ineffective treatment, a substantial departure from accepted professional judgment, practice, or standards, ignoring and obvious risk, and refusing care because of the cost." *Brown v. Osmundson*, 38 F.4th 545, 550 (7th Cir. 2022)(citations omitted)

16

116. Plaintiff did not receive *any* treatment for OUD. Despite the many risks of refusing MAT (relapse, overdose, death) Plaintiff's serious Medical needs were ignored, placing Plaintiff in eminent danger of *preventable* harm and/or death.

117. "The facts are either undisputed or presented in the light most favorable to the party opposing summary judgment. *Baptist v. Ford*, 827 F.3d 599, 599 (7th Cir. 2016). As for disputed facts presented in Plaintiff's flavor, the Court does not vouch for the objective truth of these facts; the Court simply assumes them to be true for purposes of ruling on a Motion for Summary Judgment. (See) *Stark v. Johnson & Johnson*, 10 F.th 823, 825 (7th Cir. 2021)

### XVII. Conclusion

118. The simple truth of the matter is that street drugs are far more powerful (containing unknown amounts of Fentanyl) and Plaintiff's tolerance has been reduced to nothing, making the risk of death from overdose a very real reality and serious threat for an addict of Plaintiff's type. Plaintiff has tried every type of treatment offered, for years, sometimes several times, and has only found success with one, Suboxone.

119. As far as the risks associated with untreated OUD, there is simply *no way* that "collectively" the Defendants were not aware. Plaintiff does not have access to the internet or any type of search engine, apart from Lexis Nexis, and has been able to research the information contained supra. Plaintiff believes the term would be "macro-level failure" on the part of the Defendants/Administration to uphold the values of the United States Constitution.

120. And it is Plaintiff, and others like him, who pays the price (very possibly with their lives).

### XIII. Statement of Claims

#### Claim # 1

(42 U.S.C. § 1983; Eighth and Fourteenth Amendment claim against Henry County Council, Henry County Sheriff's Department, Rick McCarkle, Tina Fox, Debra Ellington, wellpath ~~Centurion of Indiana, Centurion Staff~~)

121. Plaintiff incorporates by reference all previous paragraphs, as if restated here.

122. Defendants repeatedly failed and/or refused to provide Plaintiff with reasonably adequate medical care for his serious medical needs described supra.

17

123. Defendants were Deliberately Indifferent to Plaintiff's health and safety, as well as his disabilities, increasing the risk of harm and injury to Plaintiff, resulting in damages and other injuries described supra.

124. Defendant's violated Plaintiff's 8th and 14th amendment rights.

### Claim # 2

(42 U.S.C. § 12102 et seq; Americans with Disabilities Act discrimination and failure to reasonably accommodate claims against Henry County Council, Henry County Sheriff's Department, Rick McCarkle, Tina Fox, Debra Ellington, ~~Centurion of Indiana, Centurion Staff~~) Wellpath

125. Plaintiff incorporates by reference all previous paragraphs as if stated here.

126. Defendants were made aware of Plaintiff's multiple Disabilities as well as his multiple requests for reasonable accommodations, however Plaintiff was repeatedly denied access to services and/or programs described supra based on his disabilities and/or discrimination. Wellpath and Henry County Jail also maintained an unlawful method of Administration to request reasonable accommodations and appeal denials

127. Defendants violated the Americans with Disabilities Act described herein.

### Claim # 3

(29 U.S.C. § 794 et seq; Section 504 of the Rehabilitation Act discrimination and Failure to Accommodate claims against Henry County Council, Henry County Sheriff's Department, Rick McCarkle, Tina Fox, Debra Ellington, ~~Centurion of Indiana, Centurion Staff~~) Wellpath

128. Plaintiff incorporates by reference all previous paragraphs as if stated here.

129. Defendants were made aware of Plaintiff's multiple disabilities as well as his multiple requests for reasonable accommodations, however, Plaintiff, was repeatedly denied access to services and/or programs described supra based on his disabilities and/or discrimination. Wellpath and Henry County Jail also maintained an unlawful method of Administration to request reasonable accommodations and appeal denials.

130. Defendants violated Section 504 of the Rehabilitation Act described herein.

### Claim # 4

(42 U.S.C. § 1983; Eighth and Fourteenth Amendment claim against Henry County Counsil, Henry County Sheriff's Department, Rick McCarkle, Tina Fox, Debra Ellington, ~~Centurion of Indiana, Centurion Staff~~) wellpath

131. Plaintiff incorporates by reference all previous paragraphs as if stated here.

132. Defendants refused to provide Plaintiff with Medical Assistance.

133. Defendants violated Plaintiff's Eighth and Fourteenth Amendment Rights as described supra.

### Claim # 5 (Inadequate Funding)

(42 U.S.C § 1983; Eighth and Fourteenth Amendment inadequate funding of the Crawford County Jail claim against Henry County Council)

134. Plaintiff incorporates by reference all previous paragraphs as if stated here.

135. Defendants inadequate funding of Henry County Sheriff's requested funds that were necessary for the operation of Henry County Jail, for which the Henry County Council are statutorily required to do, and failed to do.

136. Defendants violated Plaintiff's Eighth and Fourteenth Amendment rights described supra.

### Claim # 6 (Failure to train)

(42 U.S.C. § 1983; First and Fourteenth Amendment Access to Courts claim against Henry County Council, Henry County Sheriff's Department, Rick McCarkle, Tina Fox, Debra Ellington, ~~Centurion of Indiana, Centurion Staff~~) Wellpath

137. Plaintiff incorporates by reference all previous paragraphs as if stated here.

138. "The inadequacy of police training may serve as the basis for 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). See also *Ruiz-Cortez v. City of Chi.*, 931 F.3d 592, 599 (7th Cir. 2019) ("Failure to- supervise claims, like failure-to-train claims, are a tenuous form of Monell liability" and require deliberate indifference); *Cazares v.*

19

*Frugoli*, 2017 U.S. Dist. LEXIS 49938, 2017 WL 1196978, at *19 n.16 (N.D. Ill. Mar. 31, 2017) (noting that federal courts have applied the deliberate indifference standard to failure-to-discipline claims). "In the municipal liability context (as distinct from Eighth Amendment prison-conditions cases), deliberate indifference means the [Defendants] "(1) failed to provide adequate training in light of foreseeable consequences; or (2) failed to act in response to repeated complaints of constitutional violations by its officers." *Miranda v. Cty. Of Lake*, 900 F.3d 335, 345 (7th Cir. 2018) (cleaned up). "That is, the [Defendants] must have been on "actual or constructive notice of a problem." *Id*.

139.    Defendants violated Plaintiff's First, Eighth, and Fourteenth Amendment rights described supra.

### XIV.   Statement of Relief:

140.    Order the return of all Federal funding used and received by Henry County Sheriff's Department for the time in question.

141.    Declare Plaintiff to be a Qualified Disabled Person, pursuant to Americans with Disabilities Act, Amendments Act, and Section 504 of Rehabilitation Act.

142.    Declaratory relief stating the Defendants violated First and Fourteenth Amendments of the United States Constitution, as well as the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

143.    Declare Defendants actions and omissions unconstitutional/unlawful.

144.    Declare judgment in Plaintiff's favor against Defendants.

145.    Order, upon proper Motion, an immediate preliminary injunction requiring Defendants, or their agents, do not retaliate against Plaintiff.

146.    Order a permanent injunction requiring Defendants do not retaliate against Plaintiff. [11]

147.    Order, upon proper Motion, an immediate preliminary injunction requiring Defendants, or their agents, implement a proper Medicated Assisted Treatment (MAT) program.

---

[11] This Court should recognize that, in *Powers v. summers*, 226 F.3d 815 (7th Cir. 2000), the Seventh Circuit explained that it is generally permissible for Plaintiffs to seek an injunction forbidding retaliation. Id. at 819.

148.    Order, upon proper Motion, a permanent injunction requiring Defendants, or their agents, implement a proper Medicated Assisted Treatment (MAT) program.

149.    Provide compensatory damages (where applicable) to Plaintiff in an amount determined by a Jury.

150.    Provide punitive damages (where applicable) to Plaintiff in an amount determined by a Jury.

151.    All fees associated with filing this claim.

152.    All other relief deemed just and proper in the premises.

153.    Order, upon proper motion a preliminary and permanent injunction requiring Defendants to implement a procedure for receiving and processing prisoners' requests for accommodations and appeals of denials, including specified forms, repositories to submit forms, and assistance for prisoners in completing and submitting forms,

154.    Order, upon proper motion a preliminary and permanent injunction requiring Defendants to provide initial and annual ADA training to custody staff and enhanced training to ADA coordinators, As well a providing a lawful method of Administration process to request reasonable accomodations,

## XX. Jury Demand

Plaintiff demands a Jury Trial on all issues and matters so triable.

Dated: _____        Signed: _____

Plaintiff, *pro se*
Jeremy Lee Johnson # 114749
Putnamville Correctional Facility
1946 West US Hwy 40
Greencastle, Indiana   46135

## XXI.  Verification

I, Jeremy Lee Johnson, declare under the penalties for Perjury that the foregoing representations are true and correct to the best of my knowledge and belief.

                Signed: _____

                        Plaintiff, *pro se*
                        Jeremy Lee Johnson # 114749
                        Putnamville Correctional Facility
                        1946 West US Hwy 40
                        Greencastle, Indiana  46135

### Certificate of Service

I, Jeremy Lee Johnson, declare under penalty of perjury that a true and accurate copy of the foregoing has been duly served upon the Clerk of the United States District Court, Southern District, pursuant to the Putnamville Correctional Facility's e-file service on _____.

                Signed: _____

                        Plaintiff, *pro se*
                        Jeremy Lee Johnson # 114749
                        Putnamville Correctional Facility
                        1946 West US Hwy 40
                        Greencastle, Indiana  46135